**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION**

**JERRY LYNN LOFTON**                                                                 **PETITIONER**

**V.**                                                                       **NO. 3:20-CV-00086-MPM-JMV**

**WARDEN JESSE WILLIAMS and
THE ATTORNEY GENERAL OF THE STATE OF MISSISSIPPI          RESPONDENTS**

## MEMORANDUM OPINION AND ORDER

Petitioner Jerry Lynn Lofton has filed a *pro se* habeas petition pursuant to 28 U.S.C. § 2254 challenging his State-court conviction and life sentence for first-degree murder. Having considered the submission of the parties, the State-court record, and the law applicable to Lofton's claims, the Court finds that the petition should be denied, for the reasons that follow.

## Factual and Procedural Background

The Court notes at the outset that this section will be limited in scope. In addressing the issues, additional relevant facts and/or procedural history will be set out, as necessary.

On September 13, 2016, following a jury trial in the Circuit Court of DeSoto County, Mississippi, Jerry Lynn Lofton was convicted of the June 3, 2014, murder of Edroy James Ballard, Jr., and was sentenced to a term of life without the possibility of parole as a habitual offender under Miss. Code Ann. § 99-19-81 in the custody of the Mississippi Department of Corrections. *See* Doc. # 13-9, 114-15 and 131-32. Through counsel, Lofton appealed his conviction and sentence to the Mississippi Supreme Court, raising two issues:

Issue One:     Whether (despite having counsel appointed) Lofton was essentially a *pro se* defendant and was not given proper warning about self-representation.

Issue Two:     Whether Lofton's hybrid counsel was constitutionally ineffective.

*See* Doc. # 13-10, 1-18. Lofton filed a *pro se* supplemental brief raising seven additional issues. *See id.* at 54-96. Those additional issues relevant to the instant petition include:

> Issue Three:    Whether the trial judge erred in giving a jury instruction regarding Lofton's failure to testify at trial.
>
> Issue Four:    Whether the trial judge denied Lofton the right to present witnesses and evidence.
>
> Issue Six:    Whether trial counsel was ineffective.

*See id.* The Mississippi Supreme Court affirmed Lofton's conviction and sentence on April 26, 2018. *See* Doc. # 12-1; *see also Lofton v. State*, 248 So.3d 798 (Miss. 2018), *reh'g denied* (Aug. 9, 2018), *cert. denied*, 139 S. Ct. 1569 (2019). In its opinion, the Mississippi Supreme Court addressed all issues and found them lacking in merit. *Id.* In denying relief on Lofton's claims for ineffective assistance of counsel, however, the Mississippi Supreme Court specifically preserved Lofton's right to raise the claim again through a petition for post-conviction relief. *Lofton*, 248 So.3d at 809.

On April 19, 2019, Lofton, proceeding *pro se*, filed an "Application for Leave to Proceed in the Trial Court," along with his "Motion for Post-Conviction Collateral Relief" in the Mississippi Supreme Court. *See* Doc. 13-11, p. 11-63. In his application, Lofton raised the following issues:

> Issue One: Whether counsel Stacey Spriggs rendered ineffective assistance of counsel.
>
> Issue Two: Whether the State commented on Lofton's failure to testify.

*See id.* On June 26, 2019, the Mississippi Supreme Court denied Lofton's application, finding, in pertinent part, as follows:

> After due consideration, the panel finds that most of the claims raised in the petition were either raised in the direct appeal or could have been raised in prior proceedings and are barred at this stage. The panel further finds that Lofton's claims of ineffective assistance of counsel fail to meet the standard set out in *Strickland v.*

*Washington.*  The panel finds that Lofton has presented no arguable basis for his claims and that the petition should be denied.

*See* Doc. # 12-2. (citations omitted).

Lofton filed the instant *pro se* petition for federal habeas corpus relief on March 19, 2020.

Doc. # 1.  In said petition, Lofton asserts the following grounds for relief (as summarized by the Court):

Ground One:   The trial court denied Lofton's right to present witnesses and evidence.

Ground Two:   Court-appointed counsel Stacey Spriggs rendered ineffective assistance of counsel.

Ground Three: The trial court denied Lofton's right to counsel and failed to warn him of the dangers of self-representation despite Lofton having court-appointed counsel.

Ground Four:   The trial court erred in giving Jury Instruction No. 11, as it commented on Lofton's failure to testify.

Ground Five:   The State made an impermissible oral comment on Defendant's failure to testify.

*See* Doc. # 1, p. 6-15.  On July 20, 2020, Respondents filed their response to Lofton's petition, arguing that his petition should be dismissed; specifically asserting that Grounds One through Four are without merit, and that Ground Five is procedurally barred.  Doc. # 12.  Lofton filed his reply on September 17, 2020.[1]  Doc. # 19.

## **Ground Five: Procedural Bar**

The Court first considers Lofton's argument raised in Ground Five.  Lofton's claim that the State made an impermissible oral comment on his failure to testify was held procedurally barred by the Mississippi Supreme Court on post-conviction review, as it was capable of being presented on direct appeal.  In its order denying Lofton's motion for post-conviction collateral

_____

[1] Respondents filed a sur-rebuttal to Lofton's reply without obtaining leave from the Court.  *See* Doc. # 24.  The Court, however, found said filing unnecessary, and did not consider it in determining the issues presented.

relief, the Mississippi Supreme Court found this claim to be waived under Miss. Code Ann. § 99-39-21(1).[2]  "When a state court declines to hear a prisoner's federal claims because the prisoner failed to fulfill a state procedural requirement, federal *habeas* is generally barred if the state procedural rule is independent and adequate to support the judgment."  *Sayre v. Anderson*,  238 F.3d 631, 634 (5th Cir. 2001).  The Fifth Circuit has held Section 99-39-21(1) to be an independent state procedural bar.  *Stokes v. Anderson*, 123 F.3d 858, 860 (5th Cir. 1997).  The adequacy of the bar applied to Petitioner's claims depends on "whether Mississippi has strictly or regularly applied it."  *Id.* (citation omitted).  Petitioner, however, bears "the burden of showing that the state did not strictly or regularly follow a procedural bar around the time of his appeal" and "must demonstrate that the state has failed to apply the procedural bar to claims identical or similar to those raised by the petitioner himself."  *Id.*

Lofton has not carried his burden of proof and shown an "inconsistent and irregular" application of the bar.  *See Stokes*, 123 F.3d at 861.  He has, therefore, defaulted this claim pursuant to an independent and adequate state procedural rule.  Thus, the Court may review the merits of this claim only if Lofton can show cause and actual prejudice, or that a fundamental miscarriage of justice would result from the Court's failure to consider the claim.  *See Coleman v. Thompson* , 501 U.S. 722, 750 (1991).

For a finding of cause, "there must be something *external* to the petitioner, something that cannot fairly be attributed to him" which prevented him from raising and discussing the claims as grounds for relief in state court.  *Id.* at 753 (emphasis in original).  To establish prejudice, a

---

[2] Section 99-39-21(1) of the Mississippi Code reads: "Failure by a prisoner to raise objections, defenses, claims, questions, issues or errors either in fact or law which were capable of determination at trial and/or on direct appeal, regardless of whether such are based on the laws and the Constitution of the state of Mississippi or of the United States, shall constitute a waiver thereof and shall be procedurally barred, but the court may upon a showing of cause and actual prejudice grant relief from the waiver."

petitioner must show that, but for the alleged error, the outcome of the proceeding would have been different. *Pickney v. Cain*, 337 F.3d 542 (5th Cir. 2003). To apply the fundamental miscarriage of justice exception, a petitioner must prove "as a factual matter, that he did not commit the crime of conviction." *Fairman v. Anderson*, 188 F.3d 635, 644 (5th Cir. 1999) (citations omitted). Further, he must support his allegations with new, reliable evidence, that was not presented at trial, and must show that it was "more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Id.* at 644 (citations omitted).

Lofton has not identified any external action which prevented him from presenting his claim that the State made an impermissible oral comment on his failure to testify on direct appeal. *See Coleman*, 501 U.S. at 750. Nor has he demonstrated any actual prejudice as a result of the imposition of this bar. Moreover, Lofton has not proven, that, as a factual matter, he did not commit the crime of murder, nor has he presented any new, reliable evidence that would show that, "more likely than not [] no reasonable juror would have convicted him in light of the new evidence." *See Fairman*, 188 F.3d at 644. Accordingly, the claim asserted in Ground Five is procedurally barred from federal habeas review.

### Grounds One, Two, Three and Four: Merits

Turning to Lofton's remaining claims, the Mississippi Supreme Court's merits determination limits this Court's authority to grant federal habeas relief under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under the AEDPA, a federal court cannot grant federal habeas relief on any claim that the state court adjudicated on the merits unless that adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established United States Supreme Court precedent; or (2) resulted in a decision based

on an unreasonable determination of facts in light of the evidence presented. *See* 28 U.S.C. § 2254(d)(1) and (2); *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

Federal habeas relief may be granted under the "contrary to" clause where the state court (1) arrives at a conclusion opposite that reached by the Supreme Court on a question of law; or (2) decides a case differently than the Supreme Court on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). The "unreasonable application" clause is reserved for decisions that either fail to identify the correct governing law, or identify the correct governing law but misapply it to the case. *Id.* at 407. Under this standard, a state court's decision will not warrant federal habeas relief unless its application is both incorrect *and* unreasonable. *Garcia v. Dretke*, 388 F.3d 496, 500 (5th Cir. 2004) (emphasis in original) (citation omitted). When evaluating the evidence presented in state court, a federal habeas court presumes the correctness of the state court's factual findings unless the petitioner rebuts the presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

### Grounds One and Two-Denial of the Right to Present Evidence and Ineffective Assistance of Counsel

The Court addresses Lofton's arguments raised in Grounds One and Two together as his arguments for both center around witnesses that were subpoenaed for a date that turned out to be *after* his trial concluded. In Ground One, Lofton contends that the trial court denied him the opportunity to call witnesses and present evidence in his defense, resulting in an unfair trial. In Ground Two, Lofton argues that court-appointed counsel Spriggs rendered ineffective assistance of counsel by filing trial subpoenas with incorrect appearance dates.

In support of these assignments of error, Lofton contends that he had subpoenaed witnesses, but they were subpoenaed for the "wrong" date, September 14, 2016, the day after the trial ended on September 13, 2016. After the State rested its case, Lofton moved for a directed

verdict. Doc. # 13-6, p. 106. Once the trial court overruled Lofton's motion, the following colloquy transpired:

> THE COURT: . . . Mr. Lofton, are you ready to go forward with your witnesses?
>
> THE DEFENDANT: We didn't have time to get any witnesses, Your Honor.
>
> THE COURT: Okay. So I guess your answer is that you don't have any witnesses?
>
> THE DEFENDANT: Your Honor, should I give you an explanation?
>
> THE COURT: If you want to.
>
> THE DEFENDANT: Well, we didn't have time, well, I didn't have time, Your Honor. I haven't had time to really speak with Mr. Spriggs. And I tried to give him witnesses, and I believe if I had been able to get witnesses - - you know, I wanted some expert witnesses, you know, different witnesses, but from the time that Mr. Spriggs was appointed until today's date I never had the time, Your honor. I was not - - I wasn't afforded the time. . . .
>
> THE COURT: All right.
>
> THE DEFENDANT: Yes, sir. So there are many things I wanted to have that I don't have.
>
> THE COURT: So are you resting your case now?
>
> THE DEFENDANT: Yes, sir.

Doc. # 13-6, pp. 108-09. Lofton then informed the trial court twice more that he had rested his case. *Id.* at 109.

The case was subsequently submitted to the jury. During deliberations, the jury submitted a written question to the trial court, asking whether Lofton had been allowed to present any witnesses. *Id.* at 142. The trial court responded that Lofton "chose not to call any witnesses[]" and instructed the jury to continue deliberations. *Id.* Then, for the first time, Lofton advised the trial court that his witnesses had been subpoenaed to appear on September 14, 2016, the following day. *Id.*

The Supreme Court has held that "[t]he right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies." *Washington v. Texas*, 388 U.S. 14, 19 (1967). Thus, the right to present one's own witnesses to establish a defense is a "fundamental element of due process of law." *Id.* To establish a violation of this constitutional right, "a criminal defendant must make a plausible showing that the testimony of the . . . witnesses would have been material and favorable to his defense, in ways not merely cumulative to the testimony of available witnesses." *United States v. Romero-Cruz*, 201 F.3d 374, 377 (5th Cir. 2000); *Janecka v. Cockrell*, 301 F.3d 316, 326 (5th Cir. 2002) (finding petitioner must make a plausible showing that the missing witness would have been both material and favorable to his defense in order to sustain Sixth Amendment right to compulsory process claim).

On direct appeal, the appellate court found no support for Lofton's claim that he was denied witnesses, reasoning as follows:

> Nowhere in the record did the judge deny Lofton the right to present witnesses or evidence. What actually happened was that Lofton showed up for trial without either. He rested without even attempting to call witnesses, offer any evidence, or otherwise present a defense.

*Lofton*, 248 So. 3d at 810. The appellate court then held that "[b]ecause the trial judge did not deny Lofton the right to present witnesses or evidence, there [wa]s no error." *Id.*

The record does not support a finding that Lofton was *prevented* (by the trial court) from calling witnesses or otherwise presenting evidence in his defense. Instead, Lofton's witnesses had been mistakenly subpoenaed to appear for September 14, 2016, the day after he was called to present his defense (September 13, 2016). Rather than moving for a continuance at that time so

that he could call his witnesses on the date listed in the subpoena, Lofton chose to rest his case.[3]
Although the appellate court's finding that Lofton "showed up for trial without [witnesses]" might
be an unfair characterization of the actual circumstances, the Court cannot say that its conclusion—
that he was not denied the right to present them—is unreasonable.

Even assuming, arguendo, that Lofton had shown that he was prevented from calling
witnesses at trial, he has not demonstrated that the witnesses would have been "material and
favorable" to his defense. While not entirely clear in the instant petition, the Court believes Lofton
wanted to argue self-defense at trial. *See Lofton*, 248 So. 3d at 810; *see also* Doc. # 1.pp. 57-66.
Lofton *seems* to identify L.L.[4] and Dontia Mickens as potential witnesses, but fails to describe
what testimony these two witnesses would have given, much less support their potential testimony
with affidavits or something comparable. Instead, Lofton merely opines that both L.L. and
Mickens told investigators that he shot the victim because the victim had been messing with
children at Lofton's residence. Such testimony, if presented, would not have been "material and
favorable" to Lofton's desired theory of self-defense.

Claims for ineffective assistance of counsel are governed by the standard set forth in
*Strickland*,[5] which requires a habeas petitioner to satisfy a two-prong test to warrant federal habeas
relief: (1) demonstrate constitutionally deficient performance by counsel, and (2) actual prejudice
as a result of such ineffective assistance. The "deficiency" prong requires a showing that counsel's
performance fell below an objective standard of reasonableness as measured by professional
norms, such that counsel was not functioning as counsel guaranteed by the Sixth Amendment.
*Strickland*, 466 U.S. at 687-88. A court's scrutiny must be highly deferential of counsel's

---

[3] As will be discussed thoroughly in following section, Lofton insisted on playing a vital role in his representation,
and, consequently, undertook some of these matters himself, with the aid of appointed counsel.
[4] As L.L. was a minor at the time, initials will be used to protect his anonymity. *See* Fed. R. Civ. P. 5.2(a)(3).
[5] *Strickland v. Washington*, 466 U.S. 668 (1984).

performance, so as to "eliminate the distorting effects of hindsight." *Motley v. Collins*, 18 F.3d 1123, 1126 (5th Cir. 1994). Thus, courts review an attorney's decision based upon the facts and circumstances as they existed at the time. *Lavernia v. Lynaugh*, 845 F.2d 493, 498 (5th Cir. 1986). Moreover, there is a strong presumption that counsel exercised reasonable professional judgment. *Strickland*, 466 U.S. at 689; *Martin v. McCotter*, 796 F.2d 813 (5th Cir. 1986).

Under the "prejudice" prong, the petitioner must demonstrate, to a reasonable probability, that the result of the proceedings would have been different but for the alleged conduct, or that counsel's performance rendered the result of the proceeding fundamentally unfair or unreliable. *Vuong v. Scott*, 62 F.3d 673, 685 (5th Cir. 1995); *see also Strickland*, 466 U.S. at 687. "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter,* 562 U.S. 86, 112 (2011). An error by counsel, even if professionally unreasonable, does not warrant habeas relief if the error had no effect on the judgment. *Summit v. Blackburn*, 795 F.2d 1237, 1242 (5th Cir. 1986). There is no constitutional entitlement to error-free representation. *Washington v. Watkins*, 655 F.2d 1346, 1367 (5th Cir. 1981).

On habeas review, the issue for the reviewing court is not whether the *Strickland* standard is met, but rather, whether the state-court's decision that *Strickland* was not met warrants relief under AEDPA standards. *See Harrington*, 562 U.S. at 105 ("When 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."). Accordingly, when a *Strickland* claim has been rejected on its merits by a state court, a petitioner "must demonstrate that it was necessarily unreasonable for the [state] Supreme Court" to rule as it did in order to obtain federal habeas relief. *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011). The standard for ineffective assistance of counsel claims is "doubly deferential," *Knowles v. Mirzayance*, 129 S.Ct.

1411, 1413 (2009), requiring district courts to afford "both the state court and the defense attorney the benefit of the doubt." *Woods v. Etherton*, 136 S.Ct. 1149, 1151 (2016).

On direct appeal, the appellate court ultimately concluded that the record was insufficient to address Lofton's claim for ineffective assistance of counsel and denied relief, but preserved his right to raise the issue in post-conviction review. *Lofton*, 248 So. 3d at 808. In considering the issue, however, the appellate court found as follows:

> After the jury began deliberating, Lofton for the first time took issue with some trial subpoenas. At that point, he tried to make a record about those dates and who bore the blame for supposedly incorrect appearance dates. Lofton claims Spriggs filed eight subpoenas with an incorrect appearance date. But the record does not contain any filed, returned copies of those subpoenas. Nor do any of those eight subpoenas bear Spriggs'[] certification signatures, while previous subpoenas do. The judge did mention that the court clerk had informed him that some recipients were either in Memphis or could not be located. But other than that, there is little discussion and the record is pretty bleak. There is no definitive proof or finding about who actually prepared those eight subpoenas or any mention why September 14, 2016, was selected as the appearance date. Nor is it apparent why Lofton failed to seek a continuance, much less mention the allegedly defective subpoenas, when the State rested and defense witnesses were not present.

*Id.*

Lofton again advanced this claim in his *pro se* motion for post-conviction relief. The Mississippi Supreme Court denied Lofton's petition for post-conviction relief, finding that he had failed to meet the *Strickland* standard, and further that he failed to present an arguable basis for his claims. Doc. # 12-2.

In the instant petition, Lofton contends that Spriggs rendered ineffective assistance of counsel by having trial subpoenas issued with the incorrect appearance date. Aside from conclusory allegations that Spriggs' performance was deficient and that the result of the proceedings would have been different but for Spriggs' alleged errors, Lofton's arguments repeat those made with respect to Ground One, that he was denied the right to present witnesses.

As to the subpoenas' incorrect appearance dates, Lofton attached (to his State application for post-conviction relief) a copy of a letter submitted by Spriggs in response to the bar complaint filed by Lofton. Doc. # 13-11, p. 87. In the letter, Spriggs averred:

> Despite numerous requests on my part of Mr. Lofton to provide me some names of witnesses he wished to subpoena as well as other evidence, Mr. Lofton refused to. It wasn't until 9/9/16, that I received a letter from Mr. Lofton dated 9/7/16, with a list of witnesses and other evidence he wished to have subpoenaed.

Doc. # 13-11, p. 88. Spriggs stated that he immediately issued the subpoenas, while noting that the majority of the witnesses and information sought by Lofton were located out of state, rendering service much more difficult. *Id.* Spriggs further explained that he had the subpoenas returnable on September 14, 2016, "with the assumption that the state would have at least two days['] worth of witnesses." *Id.*

Counsel's decision to subpoena Lofton's witnesses for two days after the trial was set to begin was, at least in hindsight, an error. But given the strong presumption that counsel exercised reasonable professional judgment, the Court is not convinced that such an error supports a finding of deficient performance, the first prong under *Strickland*. Even assuming Spriggs' decision to have the subpoenas returnable for September 14, 2016 did satisfy the first prong, Lofton has failed to establish prejudice. Lofton opines that his missing witnesses' testimony would have "disprove[n] deliberate design murder." Doc. # 1, p. 68. He provides no support for this assertion other than briefly stating that two of the witnesses told police that he shot the victim because he had been bothering the children at Lofton's residence. *Id.* Lofton, however, has not produced an affidavit from the proposed witnesses suggesting the "content of their projected testimony." *United States v. Cockrell*, 720 F.3d 1423, 1427 (5th Cir. 1983). Moreover, the projected testimony, as stated by Lofton, would seemingly bolster the State's prosecution, i.e. indicate a motive and/or intent, rather than support a defense. Thus, Lofton's assertions fall far short in showing, to a

12

reasonable probability, that the result of the proceedings would have been different had the jury heard the missing witnesses' testimony.

While the Court ultimately concludes that Lofton's claims on these grounds must fail, it bears noting that the particular circumstances presented are quite concerning. The Court realizes that court-appointed counsel was in a difficult position, due to the representation arrangement discussed in the following section. Even so, the Court is puzzled by counsel's failure to advise the trial court that he had subpoenaed Lofton's witnesses for the following day once Lofton was asked to present his defense. The Court is mindful that, at this point in the proceedings, Lofton had declared numerous times that he wanted to waive his counsel. The trial court, however, directed counsel to remain alongside Lofton to assist him and, consequently, the Court believes that counsel should have advised the trial court of the subpoenaed witnesses. Moreover, when Lofton, a defendant being charged with first-degree murder, stated he had no witnesses, it would have been prudent for the trial court to inquire a bit further as to *why*. Thus, the Court finds that errors were made, but as discussed above, Lofton has not shown that the potential witnesses' testimony would have affected the outcome.

In sum, Lofton has not demonstrated that he was prevented from calling witnesses, nor has he shown that the "missing" witnesses would have given testimony material and favorable to his defense. Moreover, in applying the requisite deferential standard of review, the Court finds that Lofton cannot satisfy the *Strickland* standard. The Court, therefore, finds that federal habeas relief must be denied on these claims.

### *Ground Three-Denial of the Right to Counsel*

In Ground Three, Lofton asserts that the trial court failed to comply with Supreme Court precedent in *Faretta*[6] regarding the appointment of counsel and self-representation. More specifically, Lofton asserts that, despite having court-appointed counsel for the entirety of the State proceedings, he was essentially a *pro se* defendant and, as a result, denied his Sixth Amendment right to counsel.

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have assistance of counsel for his defense." U.S. CONST. AMEND. VI. The Supreme Court has held, however, that the Sixth Amendment "implies a right of self-representation." *Faretta*, 422 U.S. at 821-36. "When an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel." *Id.* at 835. Consequently, a defendant "must 'knowingly and intelligently' forego those relinquished benefits." *Id.* (citing *Johnson v. Zerbst*, 304 U.S. 458 (1938)).

The *Faretta* Court reasoned:

> Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open.

*Faretta*, 422 U.S. at 835 (internal citations and quotations omitted).

Lofton's assertions with respect to this assignment of error focus heavily on the belief that he was entitled to, and denied, some form of "hybrid representation," through which he would represent himself but have the added benefit of a licensed attorney as co-counsel. Lofton seemingly relies upon Article 2, Section 26 of the Mississippi Constitution, which guarantees that

---

[6] *Faretta v. California*, 422 U.S. 806 (1975).

"[i]n all criminal prosecutions the accused shall have a right to be heard by himself or counsel, or *both* . . . ." (Emphasis added). Lofton additionally contends that the trial court failed to follow Rule 8.05 of the Mississippi Uniform Rules of Circuit Court and Practice ("URCCC").[7] Such arguments fail, however, as claims concerning the application of state law are not cognizable on federal habeas review. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions[,]" as "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties *of the United States*.")(emphasis added).

Regardless of the legal bases of his arguments, the record unequivocally shows that Lofton was never without counsel, but, instead, was afforded the "hybrid representation" to which he believes he was entitled. When the State's prosecution began, the trial court appointed Adam Emerson to represent Lofton. *See* Doc. # 13-4. Sometime following Emerson's appointment, Lofton stated that he wanted to hire an attorney, was afforded the time to do so, but was unable to procure private counsel. Doc. # 13-4, pp. 13-15, 23. On February 14, 2016, during a pretrial motions hearing, Emerson advised the trial court that Lofton had expressed a desire to represent himself. Doc. # 13-4, pp. 22-23. The following exchange then took place:

THE COURT: Do you realize that you're charged with murder?

THE DEFENDANT: Yes, sir.

THE COURT: You don't really want to try to represent yourself, do you?

\*\*\*

THE COURT: Well I'm not going to let you represent yourself.

THE DEFENDANT: Okay.

---

[7] Rule 8.05, at the time of Lofton's proceedings, set out the procedures for a defendant's waiver of counsel. The rule was replaced, effective July 1, 2017, by Rule 7.1 of the Mississippi Rules of Criminal Procedure.

> THE COURT: It's a very serious charge, and you would certainly be no match for the State of Mississippi.
>
> THE DEFENDANT: Okay.

Doc. # 13-4, pp. 23-25.

Many months later, on June 17, 2016, during a bond hearing/competency review, Lofton informed the trial court that he would "like to play a role in [his] defense." Doc. # 13-4, p. 70. Lofton then cited URCCC 8.05 and clarified that he wanted "it to be a hybrid defense and [he] would like to play the lead." *Id.* at 71. The trial court advised Lofton that he could "play whatever role [] he deems appropriate," and that he was allowed as much "participation as [he] want[ed]," but cautioned Lofton he was "not a lawyer," and that "Emerson [would] be there the whole time." *Id.* at 72. Lofton again stated that he wanted a "hybrid" representation, where no decisions would be made without his approval. *Id.* The trial court assured Lofton that Emerson would not make any substantive decisions without his knowledge and approval. *Id.*

Throughout the hearing, Lofton repeatedly raised the issue of "hybrid representation." *Id.* at 72-75. The trial court explained that it was "appointing Mr. Emerson to assist [Lofton] in [his] defense," even though Lofton had made "it very plain that [he] wanted to represent [himself]." *Id.* at 74. The trial court further cautioned Lofton that "when you represent yourself, you still have to abide by all the rules . . . and procedures," and that, accordingly, Emerson would remain appointed "to assist [Lofton] in complying with the Rules . . . ." *Id.* Lofton again opined that he "[didn't] want Mr. Emerson to just be an advisor," that he wanted them to be "co-counsel," where Lofton would act as "lead counsel." *Id.* at 75. The trial court confirmed the nature of Lofton's desired representation and assured Lofton that Emerson would "be there at [his] disposal." *Id.* Lofton again proclaimed that he wanted to play a role his defense, that there would be two attorneys, he and Emerson, and that he would be lead attorney. *Id.* at 78. In response, the trial court, yet again,

16

warned Lofton that he was "not an attorney," and that Emerson would remain appointed "to assist [him] in all matters during trial." *Id.*

About a month later, on July 22, 2016, the trial court held a hearing on Lofton's motion to have Emerson withdrawn as counsel. *Id.* at p. 80. At said hearing, the trial court relieved Emerson of his duties as Lofton's counsel, and appointed Stacey Spriggs in his place. *Id.* at 81. Lofton asserted, once again, that he wanted a "hybrid representation." *Id.* The trial court then expounded, "[y]ou want to represent yourself and you want an attorney, too. That's fine. You're going to be entitled to conduct your own defense, but you're going to do it with Mr. Spriggs at your side." *Id.*

Thereafter, Lofton filed a "motion for clarification of counsel," addressed by the trial court at a pretrial motions hearing held on August 19, 2016. *Id.* at 98. At this hearing, Lofton once more advised the trial court that he wanted "hybrid representation," and went on to express dissatisfaction with both former counsel Emerson, and his then current counsel Spriggs. *Id.* at 98-101. After listening to Lofton's complaints regarding representation, the trial court advised as follows:

> Mr. Lofton, I find the record is replete with instances concerning your attorneys and how they have well[-]represented you. And this [c]ourt has gone overboard to see that you have the right to an attorney, although you objected to being appointed an attorney. I have seen that you have had legal counsel at your side at all matters before this court.

> And I find no violation of your constitutional rights concerning your right to counsel and your right to represent yourself, which you're standing here in front of me today is indicative of your ability to represent yourself with your lawyer at your side to assist you, sir. Certainly, that's the way we're going to conduct this trial. If you want to maintain that right, certainly you'll be afforded it. But you're going to have Mr. Spriggs with you throughout this trial until it's concluded.

> ***
> Your attorney has been appointed to represent you and to advise you on all matters pertaining to your rights.

17

*Id.* at 101-102.

During Lofton's trial proceedings, more discussions occurred regarding representation. When the trial commenced, Lofton again referenced a "hybrid representation," and further pronounced that he did not want Spriggs to represent him. Doc. #13-5, pp. 13-15. The following exchange then occurred:

> THE COURT: Well, that request is denied.
>
> THE DEFENDANT: Are you saying that I don't have the right to waive my attorney?
>
> THE COURT: I'm saying Mr. Spriggs is going to sit at the table with you.
>
> THE DEFENDANT: Hey, I have the right to waive my attorney. I have the right to waive my attorney. I use that right.

*Id.* at 15.

The parties then engaged in jury selection, during which Lofton stated that Spriggs had "been waived." *Id.* at 17. Despite Lofton's declaration, the trial court advised the prospective jurors that Lofton was represented by himself and Spriggs. *Id.* at 18. After jury selection, Lofton again indicated a desire to waive Spriggs as counsel. *Id.* at 92. The trial court then responded as follows:

> Mr. Spriggs is appointed as your—in your words, as your hybrid representation. Pursuant to all the case law that I have reviewed, I am maintaining Mr. Spriggs to assist you in whatever role you deem it necessary to advise you with procedures throughout this trial. So if you are requesting that I dismiss Mr. Spriggs, that request is denied.

*Id.* at 92-93. Pursuant to the trial court's direction, Spriggs assisted Lofton with his defense throughout the entirety of the trial, post-trial motions, and sentencing. *See* Doc. #s 13-5, 13-6, 13-7.

On direct appeal, Lofton argued that, despite having court-appointed counsel, he was essentially a *pro se* defendant, and, further, that the trial court failed to properly warn him of the

dangers of self-representation. Doc. # 13-10, pp. 10-16. With respect to Lofton's argument that the trial court failed to warn him of the dangers of self-representation, the appellate court first noted that "Lofton was never without the assistance of counsel," but that "when an inkling arose of Lofton's desire to participate in his defense, the judge asked him if he really wanted to represent himself." *Lofton*, 248 So. 3d at 805. The appellate court further reasoned that the record showed "[Lofton] was specifically warned about and professed an appreciation of the dangers of pro se representation," and "[h]aving cautioned Lofton about self-representation, the judge still required Lofton's trial counsel to represent him." *Id.* at 805-06. The appellate court found that "these admonitions aside, we need not dwell on the judge's precautionary warning or matters of waiver because Lofton was never left to his own defense as a wholly pro se litigant." *Id.* at 806 (quotations and citation omitted).

The appellate court next considered Lofton's requested "hybrid representation," and whether he was essentially a *pro se* litigant. The appellate court found that the record clearly demonstrated that Lofton "always had access to counsel," that "Lofton's first-appointed lawyer, Emerson, fully represented him." *Id.* at 807. The appellate court further explained that after Lofton requested a "hybrid representation," Emerson remained as co-counsel, and when Spriggs was appointed in Emerson's place, "he did so under the same hybrid-representation arrangement that Lofton had previously requested." *Id.* The appellate court noted that, "[w]ith Lofton taking the lead, Spriggs was not as involved as Emerson[,] [b]ut he was present at all court appearances [,] [a]nd he assisted Lofton in some fashion at every proceeding from his appointment until Lofton's appeal." *Id.* The appellate court went on to list a number of instances of Spriggs' involvement in Lofton's defense. *Id.*

After fully considering the record and Lofton's arguments, the appellate court concluded:

. . . well before trial, Lofton specifically asked to be lead counsel. And just as he wished, no decisions were made without his approval. While at times during trial Lofton became frustrated and claimed he wanted to waive counsel, the judge required Spriggs to continue to assist Lofton, as Lofton desired. [] And Spriggs in fact remained constantly accessible, rendering both procedural and substantive assistance before, during, and after Lofton's trial. So, in short, Lofton received the best of both worlds—the assistance of counsel while conducting his own defense. And because Lofton was never left to his own defense, the trial court was not required to insure he properly waived counsel or warn him as though he were wholly pro se.

*Id.* at 807-09 (quotations, citations, and footnote omitted). Thus, the appellate court found that Lofton's claims that he was a wholly *pro se* defendant were not supported by the record and, consequently, that his claims to the contrary were without merit.

The Court agrees with the appellate court's assessment of the issue. The record shows that, time after time, the trial court made efforts to ensure that Lofton's right to counsel was not abridged. When Lofton initially indicated a desire to proceed *pro se*, the trial court counseled him against it, and ordered that court-appointed counsel remain. After Lofton repeatedly requested a "hybrid representation," the trial court acquiesced, but always with the understanding that, while Lofton could play as much of a role in his defense as he wanted, court-appointed counsel would continue their duties of representation and assist Lofton as necessary. Thus, Lofton truly had the "best of both worlds," in that he played a substantial part in his defense with the benefit of a licensed attorney to assist him at all times. The record further demonstrates that Emerson and Spriggs were not merely appointed counsel in name only, but rather they took an active role (during their respective appointments) in Lofton's defense throughout the entirety of the State proceedings against him

In sum, Lofton cannot show that the trial court failed to properly warn him of the dangers of self-representation, nor that he was a *pro se* defendant. The record, instead, shows the converse

is true. Moreover, Lofton was afforded the representation arrangement which he repeatedly requested. Accordingly, federal habeas relief is not warranted on this claim.

### Ground Four–Jury Instruction Eleven

In Ground Four, Lofton contends that the trial court erred in giving Jury Instruction Eleven, which he argues improperly instructed the jury not to draw unfavorable inferences against him for exercising his right to remain silent and not testify in his own defense. According to Lofton, the instruction impermissibly commented on his constitutional right to remain silent.

Habeas relief is generally unwarranted due to erroneous jury instructions unless the error resulted in "prejudice of a constitutional magnitude." *Gilmore v. Taylor*, 508 U.S. 333, 342-43 (1993). To warrant relief, the petitioner must demonstrate that the alleged error had a "substantial and injurious effect or influence on the determination of the jury's verdict." *Cupp v. Naughton*, 414 U.S. 141, 147 (1973).

During the jury instruction conference, the State requested an opportunity to submit a jury instruction given Lofton's decision not to testify, and Lofton objected. Doc. # 13-6, p. 116. The trial court overruled Lofton's objection, explaining "[t]hat instruction is given to protect your constitutional rights, and I'm going to give it." *Id.* The trial court subsequently gave Jury Instruction Eleven, which provided as follows:

> Members of the Jury, the Defendant has exercised his constitutional right to remain silent, and you must not draw any unfavorable inferences against the Defendant for his decision not to testify.

Doc. # 13-2, p. 57.

On direct appeal, the appellate court first noted that "[t]ypically it is the defendant, not the State, who requests the jury be instructed against drawing negative inferences when a defendant chooses not to testify." *Lofton*, 248 So. 3d at 809. The appellate court then analyzed the issue by

looking to United States Supreme Court precedent in *Lakeside v. Oregon*, 435 U.S. 333 (1978). *Id.* In *Lakeside*, the Supreme Court acknowledged that "it may be wise . . . not to give such a cautionary instruction over a defendant's objection," but held that "the giving [by a State trial judge] of such an instruction over the defendant's objection does *not* violate the privilege against compulsory self-incrimination guaranteed by the Fifth and Fourteenth Amendments." *Lakeside*, 435 U.S. at 340-41 (emphasis added). Applying *Lakeside*, the appellate court found that, "[w]hile the better practice is to follow the defendant's strategic choice, a proper cautionary instruction concerning a defendant's failure to testify, even when given over a defendant's objection, is not itself prejudicial error." *Lofton*, 248 So. 3d at 809.

Upon due consideration, the Court finds that the instruction fairly stated the law under the Fifth Amendment to the United States Constitution. Moreover, it is well-settled that giving such an instruction, even over the defendant's objection, does not violate the defendant's constitutional rights. *See Carter v. Kentucky*, 450 U.S. 288, 302 (1981) (noting that such an instruction is "deemed so important that it [] outweigh[s] the defendant's preferred tactics"); *Lakeside*, 435 U.S. at 340-41; *see also United States v. Fernandez*, 559 F.3d 303 (5th Cir. 2009); *Ochoa v. Cockrell*, 37 F. App'x 90 (5th Cir. 2002); *United States v. Haynes*, 573 F.2d 236 (5th Cir. 1978). Further, Lofton has failed to show that the instruction had an "injurious effect" on the verdict, nor does the record so reflect. Consequently, Lofton is not entitled to federal habeas relief on this ground.

## **Certificate of Appealability**

Pursuant to Rule 11(a) of the Rules Governing § 2254 Proceedings for the United States District Courts, this Court must issue or deny a certificate of appealability ("COA") upon the entry of a final order adverse to the petitioner, and Lofton must obtain a COA before appealing this

Court's decision denying federal habeas relief. *See* 28 U.S.C. § 2253(c)(1). This Court may only grant a COA if the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To obtain a COA for claims rejected on their merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). For claims rejected on procedural grounds, a petitioner must demonstrate "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling" in order for a COA to issue. *Id.* Applying this standard, the Court concludes that a COA should be denied.

## Conclusion

Based on the foregoing discussion, the Court finds that Lofton has failed to demonstrate that the State court adjudication of his claims in Grounds One, Two, Three and Four resulted in a decision contrary to, or involving an unreasonable application of, clearly established Supreme Court precedent, nor that the decision was based on an unreasonable determination of facts in light of the evidence presented. The Court further finds that Lofton's claim in Ground Five is procedurally barred from review. Accordingly, habeas relief is **DENIED**, and Lofton's petition is hereby **DISMISSED WITH PREJUDICE**. The Court further **DENIES** a certificate of appealability. A separate judgment in accordance with this opinion and order will enter this day.

**SO ORDERED**, this the 23rd day of February, 2021.

/**s**/ Michael P. Mills
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF MISSISSIPPI**